393 A.2d 1001
**COMMONWEALTH of Pennsylvania**

v.

**Brian SMITH, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1977.

Decided Nov. 3, 1978.

Stephen F. Ritner, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

The instant appeal arises from appellant's conviction, following a trial without jury, for robbery, criminal conspiracy, possession of instruments of a crime, and possession of a weapon. The only question raised in this appeal is whether the court erred in refusing to suppress identification testimony of the victim, insofar as that testimony referred to and was based upon an allegedly illegal line-up.

On the night of March 22, 1976, Daniel TiaNan was robbed in the neighborhood of 50th and Funston Streets in West Philadelphia by three men, two wielding knives and one carrying a sawed-off shotgun. Mr. TiaNan was able to provide the police with a general description of one of the men who had searched him and removed money from his pockets. In addition, earlier in the evening, Mr. TiaNan had met the three men, and he recalled that a companion had referred to the man who searched him during the robbery as "Monk."

On March 24, 1976, Officer Hugh Maguire was informed of these details before going on patrol in that neighborhood. He knew that Brian Smith fit the general description Mr.

TiaNan had provided and that Smith also was called "Monk." On the strength of this information, Officer Maguire went to the gymnasium at 50th and Parrish Streets in West Philadelphia where Smith could often be found. Finding him there, Officer Maguire arrested Smith. That same evening Smith, appellant herein, appeared in a line-up without the presence of counsel which Mr. TiaNan attended. As a result he identified appellant as the man referred to as "Monk."

Appellant's contention concerning the impropriety of this line-up is two-fold. First, he maintains that he was denied his constitutional right to have counsel present at the line-up. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Second, appellant argues that the line-up was, in any event, unduly suggestive. With both these contentions we disagree.[1]

Appellant is correct in his assertion that, in Pennsylvania, he was entitled to have counsel present during the line-up because he was under arrest at the time. *Commonwealth v. Richman*, 458 Pa. 167, 320 A.2d 351 (1974). See also *Commonwealth v. Taylor*, 472 Pa. 1, 20 n. 11, 370 A.2d 1197, 1206 n. 11 (1977). The difficulty with appellant's argument is that he was informed of his right to counsel before appearing in the line-up and stated that he did not wish for counsel to be present. Detective Mims, who conducted the line-up, informed appellant of his right to have counsel present for the line-up, that counsel would be provided free of charge if appellant could not afford to hire counsel, and informed appellant that he was a suspect in a robbery committed on March 22, 1976. Following these admonitions appellant stated that he did not desire counsel and he signed the waiver form. While the right to have counsel present is an important right, of constitutional derivation, it may be foregone by the accused under circumstances which demonstrate that

1. Appellant also argues that the victim's in-court identification was tainted by the illegal line-up. *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Since we conclude that the line-up was not illegal, we need not reach this issue.

its waiver was knowing, intelligent, and voluntary. *Commonwealth v. Wright*, 242 Pa.Super. 8, 363 A.2d 1133, 1134–35 (1976); *Commonwealth v. Jones*, 220 Pa.Super. 214, 283 A.2d 707 (1971). Cf. *Commonwealth v. Scott*, 246 Pa.Super. 58, 68, 369 A.2d 809 (1976). In the instant case, the testimony of Detective Mims, coupled with the introduction of the waiver form signed by appellant, was sufficient to establish that appellant's waiver of his right to counsel was knowing, intelligent, and voluntary. See *Commonwealth v. Richman*, supra.

Appellant's remaining argument, that the line-up was unduly suggestive, is devoid of merit. The line-up in the instant case consisted of six young black males, ranging in height from five feet, three inches tall to five feet, eleven inches tall. All men were dressed in casual attire and were seated throughout to minimize the appearance of their differences in height. All the men were medium-dark or dark complexioned and, with one exception (not appellant), were of medium build. Appellant was not the tallest nor the shortest, the youngest nor the oldest, the heaviest nor the lightest.[2] In sum, appellant was not remarkably different from his fellow participants in the line-up, a fact which the victim corroborated in his testimony at trial. Certainly, it cannot be said that the line-up was so unnecessarily suggestive and conducive to irreparable mistaken identification that appellant was denied due process of law. *Commonwealth v. Turner*, 454 Pa. 520, 314 A.2d 496 (1974); *Commonwealth v. White*, 447 Pa. 331, 290 A.2d 246 (1972); *Commonwealth v. Spann*, 235 Pa.Super. 321, 340 A.2d 862 (1975); *Commonwealth v. Carter*, 223 Pa.Super. 148, 297 A.2d 505 (1972). Absent such a finding, the court did not err in refusing to suppress the evidence of the victim's having identified appellant at a line-up conducted two days after the robbery.

Judgments of sentence are affirmed.

2. All this information was preserved on a "Standup Summary" kept by the Philadelphia Police Department.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.