**STATE of Tennessee, Respondent,**

v.

**Thomas MITCHELL, Jr., Petitioner.**

Supreme Court of Tennessee.

Jan. 14, 1980.

R. Allan Edgar, Chattanooga, for petitioner.

William M. Leech, Jr. Atty. Gen., Robert L. DeLaney, Asst. Atty. Gen., Nashville, Gary D. Gerbitz, Dist. Atty. Gen., Larry Young, Larry Campbell, Asst. Dist. Attys. Gen., Chattanooga, for respondent.

## OPINION

HENRY, Justice.

We granted certiorari in this criminal action for the sole purpose of determining whether a criminal defendant is entitled to counsel, under the Sixth Amendment to the Constitution of the United States and Article I, Section 9 of the Constitution of Tennessee, at a post-arrest lineup. We respond in the affirmative.

### I.

■ Defendant was convicted in the Criminal Court at Chattanooga on four charges of armed robbery and one charge of assault with intent to commit armed robbery. All sentences, except one, were made to run consecutively. We find that the award of consecutive sentences was proper under *Gray v. State*, 538 S.W.2d 391 (Tenn. 1976).

While we find that legally these were separate and distinct offenses, *State v. Black*, 524 S.W.2d 913 (Tenn.1975), they all grew out of a single criminal episode which occurred on February 26, 1977, in a ladies' dress shop on Broad Street in Chattanooga. Defendant entered the store in the late afternoon, and at knife point and with drawn gun, proceeded to force the three female clerks to remove all their clothing and lie on the floor, as he systematically robbed each of them, along with the store's money.

A female patron was in the fitting room trying on dresses. He proceeded to make a physical attack upon her when she refused to disrobe and lie on the floor. She managed to escape and fled screaming into the street, followed by the defendant who ran to an automobile occupied by two others and departed the scene.

He was arrested shortly after midnight, in the early morning hours of March 1, 1977. Later that same morning he was taken before a city court judge. We assume this was for the purpose of the examination required by Section 40–604, T.C.A., which mandates a preliminary examination by a magistrate prior to commitment to jail. This statute does not prevent a temporary holding without a mittimus, *Wynn v. State*, 181 Tenn. 325, 181 S.W.2d 332 (1944), and apparently defendant had been so held until city court convened.

While this is not a "preliminary hearing" in the sense contemplated by Chapter 11, Title 40, T.C.A., it is a statutorily mandated preliminary type examination before a committing magistrate. Section 40–606, T.C.A., provides that "[t]he magistrate is required to reduce the examination of the accused to writing, if he submits to an examination, and also all the evidence adduced on both sides, and is authorized to discharge, bail, or commit the accused and to take all necessary recognizances to enforce the appearance of the defendant, the prosecutor or witnesses, at the proper court."

This requirement is not new to Tennessee Law. It came into being by Chapter 16, Acts of 1815, and appeared in Section 5018, Code of 1858, in form identical to the present section.

■ Thus, for more than a century and a half, a probable cause type hearing has

been mandatory before any accused may be committed to jail.[1] While the record is meager, we assume the judge of the city court abided the requirements of this statute. Section 40–1101, T.C.A., requires that when a defendant is "brought before a magistrate upon arrest . . . the magistrate shall immediately inform of the offense with which he is charged, and of his right to the aid of counsel in every stage of the proceedings."

The committing magistrate very properly appointed a lawyer to represent the defendant at this hearing. At the conclusion of the hearing a Chattanooga Police Inspector advised the lawyer that a lineup was scheduled that afternoon. The attorney was not sure of the exact extent of his representation; however, as found by the Court of Criminal Appeals, he "advised the officer he could be considered as counsel until formally relieved and requested him not to speak to the defendant without counsel present."

Later that morning counsel was advised in one or more telephone calls that the lineup would be conducted at 1:30 p. m. The last such call was apparently around noon. The lawyer advised of a conflicting appointment for that hour and advised that he would like to have it around 2:00 p. m. He was under the impression that he would be called again before the lineup was held, and he advised the officer that he would like to be present. The calling officer advised that it would be held anyway. The attorney testified that "one of the ladies had some appointment that afternoon, or a conflict with that." The next communication received by the lawyer advised that "your man was picked out."

Irrespective of the respective contentions with respect to this matter, it is clear in this record that counsel had been appointed, had advised that he wanted to attend the lineup and that he knew, and acted upon the knowledge, that he represented the defendant. It is established by the police that the

defendant asked that his lawyer be present; he even gave the police the professional card that his lawyer had handed him earlier that morning.

The lineup was held at 1:30 p. m. in the absence of the attorney and all four victims identified the defendant.

There is no showing in this record that there was any urgency in holding the lineup. There is no satisfactory showing that it could not just as well have been held at 2:00 p. m. as requested by the lawyer. The record shows that the lineup lasted a minimum of one (1) hour and twenty (20) minutes plus the length of time taken by the last viewer.[2] The first viewer went in at 1:30 p. m., the second at 1:35 p. m., the third at 2:25 p. m., and the last at 2:50 p. m. As a minimum, the lawyer could have been present when the lineup was seen by the last two.

■ We agree with Judge O'Brien, writing for the Court of Criminal Appeals, that the conduct of the police was "arbitrary," "unconscionable," "erroneous" and "improper." We do not agree with his reasoning that the bail hearing in city court was not the start of adversary proceedings; and that therefore, the right to counsel did not attach. This right had already attached because Officer Charles Love had "taken out" a warrant at approximately 2:00 a. m., the morning of the lineup. As is more fully developed hereinafter, this was when the State "crossed the Rubicon"—it had made a decisive commitment to prosecute.

II.

The conviction in this case was based upon the testimony of the four victims.

Early in her testimony the first witness was asked if she recognized the defendant. Defense counsel objected, and when the Trial Judge overruled the objection, requested a jury-out hearing. It was his position that

---

1. This was the law as it existed at the time this defendant appeared before the committing magistrate. The New Rules of Criminal Procedure now govern. See Rules 3, 4 and 5, Tenn. R.Crim.P.

2. The four witnesses viewed the lineup separately and apart from each other.

the in-court identification was tainted by the lineup identification. The request was denied and the witness identified the defendant. This action on the part of the Trial Judge was erroneous. For reasons pointed out in the ensuing section he should have determined these matters on the basis of evidence elicited at a jury-out hearing.

Subsequently, the State elicited testimony that after the robbery, she next saw him at the lineup. The Court sustained an objection to a question designed to elicit an answer that she identified him, pending a determination out of the presence of the, jury.

At the conclusion of her testimony a jury-out hearing was conducted. At this hearing the matter of counsel and the details of the lineup were developed. The question of whether the witnesses had a source, independent of the lineup, by which to form a basis for the identification was not developed. This was critical.

At the conclusion of this hearing the Trial Judge overruled defendant's motion to suppress the testimony of the lineup identification.

Each of the remaining witnesses made in-court identification and testified to the lineup identification.

### III.

Our analysis of the issues begins with two landmark cases decided by the Supreme Court of the United States in 1967 and concludes with those of more recent vintage.

The first of these, *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), involved the precise question of whether an identification made at trial must be excluded because the defendant was placed in a *post-indictment* lineup without notice to and in the absence of counsel.

After a full discussion and documentation of the Court's assertion that a lineup con-

frontation is "peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial," 388 U.S. at 228, 87 S.Ct. at 1933, 18 L.Ed.2d at 1158, it was held that a post-indictment lineup was a critical stage of the prosecution at which defendant was "as much entitled to such aid [of counsel] as at the trial itself." 388 U.S. at 237, 87 S.Ct. at 1937, 18 L.Ed.2d at 1163. Thus, the Court said, he and his counsel "should have been notified of the impending lineup, and *counsel's presence should have been a requisite* to conduct of the lineup, absent an 'intelligent waiver.'" (Emphasis supplied). *Id.*

Finally, in determining the question of whether to strike the in-court identification, the Court adopted the test of *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455:

> [W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. 388 U.S. at 241, 87 S.Ct. at. 1939, 18 L.Ed.2d at 1165.

The Court then specified factors which should be considered: (1) prior opportunity to observe the alleged criminal act, (2) the existence of any discrepancy between any pre-lineup description and the defendant's actual description, (3) any identification prior to lineup of another person, (4) identification by picture prior to the lineup, (5) failure to identify the defendant on a prior occasion, (6) the lapse of time between the act and the lineup identification, (7) and facts concerning the lineup.[3]

Because the Court on the record before it could not make the determination whether the in-court identification had an independent origin, it vacated the conviction "pending a hearing" to determine the existence for such an independent source, or whether,

---

**3.** These are substantially the same factors as outlined in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), adopted by this Court in *Bennett v. State*, 530 S.W.2d 511 (Tenn.1975). *See also Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 for "totality of circumstances" rule.

in any event, the introduction of the evidence was harmless error, *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and for the District Court to reinstate the conviction or order a new trial, as may be proper. 388 U.S. at 242, 87 S.Ct. at 1940, 18 L.Ed.2d at 1166. This is the procedure we consider it proper to follow in the instant case.

■ Thus, under *Wade,* a post-indictment lineup is a critical stage of a criminal prosecution; the defendant and his counsel must be notified; and conducting such a lineup without notice to and in the absence of counsel denies the defendant his Sixth Amendment right to counsel; and calls into question the admissibility of an in-court identification made at trial.

■ The reviewing court, in passing upon the admissibility of an in-court identification, may make its own determination, assuming the presence of an adequate record. In the absence of such a record, the conviction should be vacated and the case remanded to the trial court for such determination. Either the appellate or the trial court, on the basis of the record, may find the error to be harmless beyond a reasonable doubt. Nothing in *Wade* either requires a remand or commands a reversal solely because of an uncounselled lineup. It must be borne in mind that *Wade* involved a post-indictment lineup. Further, it should be noted that in *Wade,* unlike the case at bar, the prosecution did not elicit testimony in its case-in-chief that witnesses had identified the accused at the lineup.

In the second case, *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the Court again dealt with a post-indictment lineup, conducted in the absence of counsel. The Court held that "[t]he admission of the in-court identifications without first determining that they were not tainted by the illegal lineup but were of independent origin was constitutional error." 388 U.S. at 272, 87 S.Ct. at 1956, 18 L.Ed.2d at 1186.

*Gilbert* differs from *Wade* in that the *Gilbert* prosecution did elicit testimony in chief that identifications had been made at an uncounselled lineup. The Court noted that such testimony would "enhance the impact of his in-court identification on the jury and seriously aggravate whatever derogation exists of the accused's right to a fair trial." 388 U.S. at 273–74, 87 S.Ct. at 1957, 18 L.Ed.2d at 1187. This followed from the fact that the witnesses' trial testimony "is the direct result of the illegal lineup and it was "come at by the exploitation of [the primary] illegality." Citing *Wong Sun, supra,* 388 U.S. at 272–73, 87 S.Ct. at 1956–57, 18 L.Ed.2d at 1186.

The *Gilbert* Court held that:

[t]he State is therefore not entitled to an opportunity to show that testimony had an independent source. Only a per se exclusionary rule as to such testimony can be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right to the presence of counsel at the critical lineup . . . the desirability of deterring the constitutionally objectionable practice must prevail over the undesirability of excluding relevant evidence. 388 U.S. at 273, 87 S.Ct. at 1957, 18 L.Ed.2d at 1186–87.

The conviction was vacated, and the cause remanded to the Supreme Court of California for a determination of whether the admission of this testimony was harmless constitutional error under *Chapman v. California, supra.*

In *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the issue was presented more in terms of when the right to counsel attached. Involved was a police station showup *occurring before* the defendant had been indicted or formally charged.

In general terms the Court defined the nature of the commencement of a criminal prosecution thusly:

The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of govern-

ment and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the "criminal prosecutions" to which alone the explicit guarantees of the Sixth Amendment are applicable. 406 U.S. 689–90, 92 S.Ct. at 1882, 32 L.Ed.2d 417–18.

The Court declined to extend the *Wade-Gilbert* exclusionary rule to an uncounselled showup which preceded formal arrest, treating this as a mere "routine police investigation." It should be pointed out further that the accused was not, at the time, represented by counsel nor had he requested legal assistance, as was true in the instant case.

In the meantime our appellate courts consistently were holding that an uncounselled lineup held prior to indictment did not violate the accused's constitutional rights. *See*, in chronological order: *Maxwell v. State*, 501 S.W.2d 577 (Tenn.Cr.App.1973); *Craig v. State*, 506 S.W.2d 949 (Tenn.Cr. App.1974); *State v. Jefferson*, 529 S.W.2d 674 (Tenn.1975); *Harrison v. State*, 532 S.W.2d 566 (Tenn.Cr.App.1975); *Proctor v. State*, 565 S.W.2d 909 (Tenn.Cr.App.1978).

It is interesting to note that in *Greer v. State*, 1 Tenn.Cr.App. 407, 443 S.W.2d 681 (1969), two years after *Wade* and *Gilbert*, Judge Walker, speaking for the Court of Criminal Appeals, held that an uncounselled lineup identification made *on the day of an arrest, without a warrant*, and therefore, *before* indictment, violated the defendant's Sixth Amendment right to counsel and rendered evidence of the out-of-court identification incompetent. *Sub silentio*, this case has been overruled *pro tanto* by *Maxwell, Craig, Jefferson, Harrison, Proctor* and oth-

er cases making similar rulings; however, the effect of *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), is to reinstate *Greer* and to force the conclusion that these other cases are no longer authoritative on this precise issue.

In *Moore*, the accused was identified at a preliminary probable cause hearing held one day after the arrest, and at which he was not represented by counsel. Resolving some misunderstanding arising from *Kirby* the Court firmly states that the right to counsel attaches " 'at or after the initiation of adversary judicial criminal proceedings,' including proceedings instituted 'by way of formal charge [or] preliminary hearing.' " 434 U.S. at 228, 98 S.Ct. at 464, 54 L.Ed.2d 433. This is the crux of the Court's holding.

 We hold that right to counsel attaches when adversary judicial proceedings are initiated. Initiation is marked by formal charge, which we construe to be an arrest warrant,[4] or at the time of the preliminary hearing in those rare cases where a preliminary hearing is not preceded by an arrest warrant, or by indictment or presentment when the charge is initiated by the Grand Jury.

Our conclusion that an arrest warrant is the initiation of formal charges is buttressed by several considerations.

First it seems obvious to us that the issuance of an arrest warrant brings to an end the investigative stage and inaugurates the beginning of the accusatory and adversary stage. This conclusion is inevitable in view of Chapter 7, Title 40, T.C.A. Sections 40–701, *et seq.*, provide for the issuance of a warrant based upon an examination of the informant; that the examination be reduced to writing; that the written examination set forth facts tending to establish the commission of the offense and the guilt

4. When an arrest is made without a warrant and a lineup is conducted there is no constitutional right to counsel; however, even then the accused is constitutionally protected against unnecessarily suggestive procedures. *See Moore v. Illinois*, 434 U.S. at 227, 98 S.Ct. at 464, 54 L.Ed.2d at 433. We noted in *Forbes v. State*, 559 S.W.2d 318 (Tenn.1977), that "since the identification occurred during the investigative phase and prior to arrest, we are not dealing with the Sixth Amendment right to counsel." 559 S.W.2d at 322. However, we considered the Due Process aspect and determined that the identification procedure was not impermissibly suggestive.

of the defendant; and for the issuance of the warrant if the magistrate is satisfied that the offense has been committed and there is reasonable ground to believe the defendant is guilty. In short, this is a unilateral and initial probable cause hearing.[5]

Sections 720, 722, *Caruthers' History of a Lawsuit* (8th ed. 1963), specifies the three ways of commencing a prosecution under Tennessee Law, to wit: (1) by arresting an offender upon a warrant issued by a magistrate, (2) by arrest without a warrant, and (3) by presentment, indictment or impeachment. *See Jones v. State*, 206 Tenn. 245, 332 S.W.2d 662 (1960).

We have not considered it necessary to make an exhaustive investigation because we are applying Tennessee law in the light of our own constitution and federal constitutional principles by which we are bound; however, we note that appellate courts of Pennsylvania, North Carolina and Missouri have held that formal arrest or charge marks the commencement of prosecution, *Commonwealth v. Smith*, 260 Pa.Super. 38, 393 A.2d 1001 (1978); triggers the right to counsel at lineups; *State v. McCain*, 39 N.C.App. 213, 249 S.E.2d 812 (1978); and the filing of a complaint constitutes the initiation of adversary judicial procedure. *Arnold v. State*, 484 S.W.2d 248 (Mo.1972).

Most assuredly the issuance of a warrant, under Tennessee law and procedure, commits the State to a prosecution and "a defendant finds himself faced with prosecutorial forces of organized society."

█ We hold that under the Sixth Amendment to the Constitution of the United States and under Article I, Section 9 of the Constitution of Tennessee, a person accused of crime is entitled to the guiding hand of counsel at any post-arrest lineup, showup, walkin or other type identification parade or process wherein he is required to submit to corporeal identification, absent a knowing, voluntary and effective written waiver. By this holding we conform the law governing post-arrest lineup, to that formerly applied to post-indictment lineup and overrule all cases contra.

█ We further hold that any identification made in violation of this holding may not form the basis for in-court testimony and the prosecution is not entitled to show that the testimony so offered had an independent source. An in-court identification by a witness who also made an identification at a lineup, or other similar device, is not *per se* inadmissible; however, it may only be received after the Trial Judge shall have conducted a jury-out evidentiary hearing designed to ensure that the witness' in-court recollection is not tainted by the illegal lineup or, as Judge Walker phrased it in *Greer v. State, supra*, "whether, granting the primary illegality of his out-of-court identification, the in-court evidence 'has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" 443 S.W.2d at 687. The *Wade* factors heretofore enumerated and others herein referenced (*see* footnote 3, *supra*) will be given judicious and objective consideration, with due regard given to the admonition of *Wade* that lineups "present a particular hazard that a victim's understandable outrage may excite vengeful or spiteful motives." 388 U.S. at 230, 87 S.Ct. at 1939, 18 L.Ed.2d at 1159.

█ We hold, in this case, that the testimony of the eyewitnesses, to the extent of their participation in the illegal lineup identification, was inadmissible[6] and that the facts are sufficient to call into question the validity of their in-court identification. However, on the record before us we hold that the lineup was not reversible error.

We hold that there was an independent basis for the in-court identifications suffi-

---

5. The Rules of Criminal Procedure went into effect on July 13, 1978, which was after the initial proceedings in this case. Rules 3 and 4 govern the affidavit of complaint and the issuance of a warrant, and Rule 5 governs the initial appearance before the magistrate.

6. This accords with the holding of the Court of Criminal Appeals in *Greer v. State, supra*.

288

cient to remove the taint of those made at the constitutionally infirm lineup. The error was, therefore, harmless beyond a reasonable doubt under *Chapman v. California, supra.*

In the present case, four victims were held at knife-point and were threatened and abused by the respondent for a substantial period of time. The opportunity of the witnesses to observe the accused was sufficient to satisfy the Court that the in-court identification was not tainted by the illegal lineup. At the trial, the judge stated that he was firmly of the opinion that nothing that happened at the lineup a few days later affected the case in any way.

We will not apply the rule we announce retroactively to any case involving post-conviction relief. It will be applied to all future cases tried after the release of this opinion; and to all cases now in the process of appellate review, wherein the specific issue is raised.

While we did not restrict our grant of certiorari, we were only concerned with the issues herein discussed. We have, however, reconsidered all petitioner's remaining assignments and find them to be without merit.

MODIFIED AND AFFIRMED.

BROCK, C.J., and FONES, COOPER and HARBISON, JJ., concur.