June **BRUNMEIER**, Appellant
(Defendant),

v.

The **STATE of Wyoming**,
Appellee (Plaintiff).

No. 86–140.

Supreme Court of Wyoming.

Feb. 26, 1987.

Leonard D. Munker, State Public Defender, Julie D. Naylor (argued), Appellate Counsel, Cheyenne, Gerald M. Gallivan, Wyoming Public Defender Program, Laramie, and John D. Whitaker, Public Defender Program, Casper, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Terry L.

Armitage (argued), Legal Intern, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

Appellant was convicted of violating the Wyoming forgery statute, § 6-3-602(a)(ii), W.S.1977, and was sentenced to incarceration for a period of not less than 18 months nor more than 48 months and fined $1,000. The single issue raised on appeal is whether appellant's privilege against self-incrimination guaranteed by Art. I, § 11 of the Wyoming Constitution was violated when she was required to produce a handwriting exemplar.

We affirm.

On July 5, 1985, appellant cashed a $300 check at the Horizon Lounge in Gillette, Wyoming. The check was drawn on the account of Jerome Kastrow and was made payable to the order of appellant. Later that evening the manager of the Horizon Bar contacted Mr. Kastrow and asked him to come to the lounge. When Mr. Kastrow arrived, the manager presented the instrument and demanded payment. Mr. Kastrow insisted that he did not issue the check and refused to pay.

On July 15, 1985, Mr. Kastrow signed an affidavit of forgery at the Stockmens Bank in Gillette, Wyoming. He informed officers of the Campbell County Sheriff's Office that he believed appellant was the person who cashed the check and that she did so without his consent or authorization. On August 26, 1985, appellant was arrested and charged with two counts of forgery. One count was subsequently dropped.

Before trial, the State obtained an order compelling appellant to provide a handwriting exemplar for use at trial. Appellant complied with the order, over objection, and now contends that her privilege against self-incrimination under Art. I, § 11 of the Wyoming Constitution was violated when she was compelled to furnish the handwriting exemplar.

It is well established that the privilege against self-incrimination contained in the Fifth Amendment of the United States Constitution does not prohibit a court from compelling a defendant to furnish handwriting exemplars. In *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967), the United States Supreme Court held that

"[t]he taking of [handwriting] exemplars did not violate petitioner's Fifth Amendment privilege against self-incrimination. The privilege reaches only compulsion of 'an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers,' and not 'compulsion which makes a suspect or accused the source of "real or physical evidence" * * *.' *Schmerber v. State of California*, 384 U.S. 757, 763-764, 86 S.Ct. 1826, 1833, 16 L.Ed.2d 908 [1966]. One's voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection. *United States v. Wade*, supra, 388 U.S. [218], at 222-223, 87 S.Ct. [1926], at 1929-1930 [18 L.Ed.2d 1149 (1967)]."

This court has observed that the Fifth Amendment privilege against self-incrimination only protects against the compulsion of incriminating evidence of a testimonial or communicative nature. *Cook v. State*, Wyo., 631 P.2d 5, 9 (1981). In this case appellant asks us to hold that Art. I, § 11 of the Wyoming Constitution provides greater protection to a criminal defendant.[1] We decline to do so.

---

1. "[C]onstitutional standards announced by the Supreme Court of the United States are minimal, which rights may be enlarged under State constitutional provisions if justifiable." *Richmond v. State*, Wyo., 554 P.2d 1217, 1223 (1976).

Our decision is supported not only by the overwhelming weight of authority, see Annot., 43 A.L.R.3d 653 (1972), but also by the specific wording of Art. I, § 11, which is even more restrictive than that of the federal constitutional provision. While the federal provision states that "no person * * * shall be compelled in any criminal case to be a witness against himself," our state constitution provides that: "No person shall be compelled to *testify* against himself in any criminal case * * *." (Emphasis added.)

Appellant urges us to adopt the rule followed by Georgia, the single jurisdiction that has departed from the federal rule. The Georgia Supreme Court has held that a defendant may not be compelled to produce a handwriting exemplar because Art. I, § 1, Paragraph XIII of the Georgia Constitution (1976) protects a defendant from being forced to "perform an act which results in the production of incriminating evidence." *State v. Armstead,* 152 Ga.App. 56, 262 S.E.2d 233, 234 (1979). The Armstead court, following the rule previously announced in *Creamer v. State,* 229 Ga. 511, 192 S.E.2d 350 (1972), drew a distinction between forcing a defendant to *submit to* an act and compelling him to *affirmatively perform* an act which tends to incriminate him. In *Hansen v. Owens, Utah,* 619 P.2d 315 (1980), the Supreme Court of Utah adopted the Georgia approach. In 1985, however, Hansen was overruled. In *American Fork City v. Crosgrove, Utah,* 701 P.2d 1069 (1985), the Utah Supreme Court identified the shortcomings of the submission/affirmative act distinction, stating:

> "[T]he standard can lead to irrational distinctions and incongruous results. For example, under the affirmative act standard, an accused could not be compelled to place his foot in a footprint near the scene of the crime * * * [y]et an officer could forcibly remove the accused's shoe and place it in the track. Similarly, an accused could not be compelled to provide a voice exemplar, to be matched against a voice graph from a recording made at the time of the crime, but he could be fingerprinted against his will. * * * The distinction might also mean that the state could obtain blood samples from an unconscious person, but could not get a breath sample from a conscious person, even though the latter is far less intrusive upon a person's privacy and bodily integrity. In short, the affirmative act standard requires the state to make overly fine distinctions that may not further significantly the policies of the privilege." (Citations omitted.) *Id.* at 1074–1075.

We find the reasoning of the Utah Supreme Court persuasive and, therefore, we decline to adopt the affirmative act standard urged by appellant.

Appellant's conviction is affirmed.

URBIGKIT, J., filed a dissenting opinion.

URBIGKIT, Justice, dissenting.

While the court's opinion is in accord with the principles of federal constitutional law enunciated by a majority of the United States Supreme Court in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); and *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), I am persuaded by the compelling reasoning of the four dissenters to those opinions. In the present factual situation I would extend to accused persons greater rights under the Wyoming Constitution than those apparently afforded by the judicially diluted Bill of Rights of the United States Constitution.

June Brunmeier was compelled, for the State's case, not her own defense, to give handwriting exemplars so as to simulate the checks she was charged with forging. In short, this defendant was required to reenact the crime with which she was charged, and the State introduced the resulting evidence against her at trial.

Logic and justice should determine that the compulsory handwriting exemplar violated appellant's privilege against self-in-

crimination guaranteed by Art. 1, § 11 of the Wyoming Constitution. The reasoning found in the dissenting opinions to the federal precedent relied on by this court is compelling, and I believe justifies a broader interpretation of this privilege than the federal courts have given it.

In Schmerber the petitioner was compelled, against his will, to allow a doctor to extract a blood sample for alcohol analysis, the results of which were then used as evidence to convict the petitioner of a crime. The Schmerber court held, 5 votes to 4, that the compulsory blood-letting did not violate the Fifth Amendment prohibition against compelling a person to be a witness against himself because the blood extraction was neither communicative nor testimonial, but rather a source of real or physical evidence.

Justice Black's response in his dissent, compelling in reasoning to me, stated:

" * * * To reach the conclusion that compelling a person to give his blood to help the State convict him is not equivalent to compelling him to be a witness against himself strikes me as quite an extraordinary feat.

*　*　*　*　*　*

"In the first place it seems to me that the compulsory extraction of petitioner's blood for analysis so that the person who analyzed it could give evidence to convict him had both a 'testimonial' and a 'communicative nature.' The sole purpose of this project which proved to be successful was to obtain 'testimony' from some person to prove that petitioner had alcohol in his blood at the time he was arrested. And the purpose of the project was certainly 'communicative' in that the analysis of the blood was to supply information to enable a witness to communicate to the court and jury that petitioner was more or less drunk." 384 U.S. at 773, 86 S.Ct. at 1837.

Later, in his partial dissent to *Gilbert v. California,* supra, 388 U.S. at 278, 87 S.Ct. at 1963, Justice Black stated:

" * * * Compelling a suspect or an accused to be 'the source of "real or physi-

cal evidence" * * *,' so says Schmerber, 384 U.S. at 764, [86 S.Ct. at 1832], is not compelling him to be a witness against himself. Such an artificial distinction between things that are in reality the same is in my judgment wholly out of line with the liberal construction which should always be given to the Bill of Rights. See *Boyd v. United States,* 116 U.S. 616 [6 S.Ct. 524, 29 L.Ed. 746]."

In *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), the court announced a rule of constitutional interpretation followed particularly in judicial construction of Bill of Rights guarantees:

" * * * It is the duty of courts to be watchful for the constitutional rights of the citizen and against any stealthy encroachments thereon." 116 U.S. at 635, 6 S.Ct. at 535.

In *United States v. Wade,* supra, the defendant was compelled to stand in a lineup and utter the words purportedly uttered by the robber. The United States Supreme Court held, again 5 votes to 4, that the defendant was not compelled to utter statements testimonial in nature, but was only required to use his voice as an identifying physical characteristic.

In his partial dissent, Justice Black reasoned:

" * * * Had Wade been compelled to utter these or any other words in open court, it is plain that he would have been entitled to a new trial because of having been compelled to be a witness against himself. Being forced by the Government to help convict himself and to supply evidence against himself by talking outside the courtroom is equally violative of his constitutional right not to be compelled to be a witness against himself." 388 U.S. at 245, 87 S.Ct. at 1942.

Justice Fortas' opinion, concurring in part and dissenting in part, joined by Chief Justice Warren and Justice Douglas, stated:

"It is the kind of volitional act—the kind of forced cooperation by the accused—which is within the historical perimeter

of the privilege against compelled self-incrimination.

\*     \*     \*     \*     \*     \*

" \* \* \* To compel him to speak would violate the privilege against self-incrimination, which is incorporated in the Fifth Amendment.

"This great privilege is not merely a shield for the accused. It is also a prescription of technique designed to guide the State's investigation. History teaches us that self-accusation is an unreliable instrument of detection, apt to inculpate the innocent-but-weak and to enable the guilty to escape. But this is not the end of the story. The privilege historically goes to the roots of democratic and religious principle. It prevents the debasement of the citizen which would result from compelling him to 'accuse' himself before the power of the state. The roots of the privilege are deeper than the rack and the screw used to extort confessions. They go to the nature of a free man and to his relationship to the state." 388 U.S. at 260–261, 87 S.Ct. at 1949–1950.

In *Gilbert v. California,* supra, the State obtained handwriting exemplars which were admitted in evidence at trial over objection that they were obtained in violation of petitioner's Fifth Amendment right against self-incrimination. The court rejected petitioner's argument, and held that " \* \* \* [o]ne's voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection. *United States v. Wade,* supra, at 222–223 [87 S.Ct. at 1929–1930]. No claim is made that the content of the exemplars was testimonial or communicative matter." 388 U.S. at 266–267, 87 S.Ct. at 1953.

Again four Justices dissented to this section of the court's holding. In his partial concurrence and partial dissent, with which Chief Justice Warren joined, Justice Fortas observed:

"The Court today appears to hold that an accused may be compelled to give a handwriting exemplar. Cf. *Schmerber v. California,* 384 U.S. 757 [86 S.Ct. 1826, 16 L.Ed.2d 908] (1966). Presumably, he may be punished if he adamantly refuses. Unlike blood, handwriting cannot be extracted by a doctor from an accused's veins while the accused is subjected to physical restraint, which Schmerber permits. So presumably, on the basis of the Court's decision, trial courts may hold an accused in contempt and keep him in jail—indefinitely—until he gives a handwriting exemplar.

"This decision goes beyond Schmerber. Here the accused \* \* \* is compelled to cooperate, not merely to submit; to engage in a volitional act, not merely to suffer the inevitable consequences of arrest and state custody; to take affirmative action which may not merely identify him, but tie him directly to the crime. I dissented in Schmerber. For reasons stated in my separate opinion in *United States v. Wade,* supra, I regard the extension of Schmerber as impermissible." 388 U.S. at 291–292, 87 S.Ct. at 1965–1966.

I agree with those able and thoughtful writers in dissent, that the Fifth Amendment proscription against self-incrimination should also apply to compulsory handwriting exemplars. It is unsound in language and logic to characterize such a handwriting requirement as mere physical evidence, particularly where the accused is compelled, as in this case, to reenact the crime. Compelling such a reenactment clearly violates the constitutional guarantee that one need not testify against himself.

The holding in *Gilbert v. California,* supra, cited by this court reveals the absurdity of the Gilbert court's reasoning. That court said:

" \* \* \* A mere handwriting exemplar, *in contrast to the content of what is written,* like the voice or body itself, is an

identifying physical characteristic outside [Fifth Amendment] protection." (Emphasis added.) 388 U.S. at 266–267, 87 S.Ct. at 1953.

Does this mean that a defendant may not be compelled to write "I forged the check," but may be compelled to forge a blank check—to actually do the act for which he is being prosecuted? If that is the incongruous holding in Gilbert, I see no reason to join in the artless reasoning leading to such a result. In both cases, the defendant is compelled to witness against himself, "to accuse himself by a volitional act." *United States v. Wade*, supra, 388 U.S. at 261, 87 S.Ct. at 1950, Fortas, J., concurring in part and dissenting in part.

This court suggests that the distinction between the language contained in the federal constitutional provision and the Wyoming Constitution is meaningful, in adversity to the criminally accused. I respectfully disagree. Whether the proscription is against the compulsion "to be a witness against himself," as stated in the federal constitution, or "to testify against himself," as stated in the Wyoming Constitution, under the language of either provision, a compulsory reenactment of the crime is prohibited. To force a defendant to simulate the forging of a check is to compel him to testify against himself. Any attempt to hold otherwise is, in my opinion, a misadventurous perpetuation of the "artificial distinction between things that are in reality the same." *Gilbert v. California*,

supra, 388 U.S. at 278, 87 S.Ct. at 1963, Black, J., concurring in part and dissenting in part. My reading of the annals of the Wyoming Constitutional Convention provides no demonstration of a diminished interest in individual rights and guarantees in what was then the raw frontier of an individualistic society.

Where, by the slimmest of majorities, the United States Supreme Court has failed to breathe life into the spirit of the Fifth Amendment prohibition against self-incrimination, this court should now awaken that spirit and give life to the similar prohibition in the Wyoming Constitution. Today, by acquiescing in the artificial distinction between physical evidence and testimonial communicative evidence, we, as justices of this court who are designated guardians of the Wyoming Constitution, pass up an opportunity to champion the fundamental right not to testify against himself assured every citizen by the basic principles of our democratic society and the Anglo-Saxon constitutional foundation of our judicial heritage.

I dissent.