IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

NOVEMBER 1998 SESSION

FILED

January 27, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 01C01-9709-CC-00435 |
| Appellee, | ) | |
| | ) | GILES COUNTY |
| VS. | ) | |
| | ) | HON. JIM T. HAMILTON, |
| KEITH SLATER, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Premeditated First Degree |
| | ) | Murder) |

**FOR THE APPELLANT:**

HERSHELL D. KOGER
131 North 1st St.
P.O. Box 1148
Pulaski, TN 38478

**FOR THE APPELLEE:**

PAUL G. SUMMERS
Attorney General and Reporter

LISA A. NAYLOR
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

T. MICHAEL BOTTOMS
District Attorney General

RICHARD H. DUNAVANT
ROBERT C. SANDERS
Asst. District Attomeys General
P.O. Box 304
Pulaski, TN 38478-0304

OPINION FILED: _____

AFFIRMED IN PART; VACATED; AND REMANDED IN PART

JOE G. RILEY,
JUDGE

**OPINION**

The defendant was convicted of premeditated first degree murder by a Giles County jury and received a sentence of life imprisonment. In this appeal as of right, the defendant challenges: (1) the sufficiency of the evidence; (2) the trial court's refusal to suppress his taped phone conversation with his roommate; and (3) its refusal to suppress his statement to the police. Upon our review of the record, we AFFIRM IN PART, but REMAND for another hearing on the motion to suppress defendant's statement to the police.

## I. FACTS

The victim, Melvin Franklin, was shot twice at his trailer home in the early morning hours of August 31, 1996. One bullet struck him in the back and the other in his right buttock. Kevin Folston, a neighbor, heard the gunshots and saw Kendrick Young's car leaving the scene with its lights off. He did not see defendant in the car; however, shortly thereafter he saw a man come to the trailer door and then leave. Mattie Louise Gordon, the victim's niece, found Franklin's body several hours later.

The police initially arrested Young for the homicide. In his statement to Investigator John Dickey, Young implicated his roommate, the defendant, as the shooter. Dickey had Young make a taped phone call to defendant's workplace. During the conversation, defendant acknowledged shooting the victim.[1]

Based upon Young's statement and the recorded phone call, Dickey obtained an arrest warrant for defendant which was executed. Once at the station, defendant was booked, taken into Dickey's office and given his *Miranda* warnings. Defendant gave a statement outlining his involvement in the shooting, including an admission that he was the triggerman.

---

[1] A transcript of the phone call was provided to the jury, but was not included in the record. The record does contain the original recording. The tape reflects defendant and Young discussing the incident. Defendant answers in the affirmative Young's question that if he (Young) were convicted, would he (the defendant) come forward and say that he (the defendant) shot the victim. It further portrays Young asking defendant if anyone else knew that he (the defendant) shot the victim, to which the defendant responds in the negative.

## A. Testimony of Kendrick Young

Young testified at trial that he and defendant drove in Young's car to Franklin's home. They went to retrieve money that Young thought Franklin had taken from his cousin, Clarence Jacobs, earlier that evening. Young entered the trailer and found Franklin at the kitchen table "[s]moking crack." He asked about Jacob's money and Franklin denied taking it. Young said he then took Franklin's drugs and pipe and walked toward the back of the trailer.

According to Young's testimony, at this point defendant asked him, "[w]hat you want to do, man?" to which Young replied, "I don't know." He was looking out a window when defendant said, "[b]ye, Melvin." Young then heard a gunshot. When Young turned around, he saw the defendant "right there" and ran. He heard about four shots but did not see a gun.

Young testified that he ran to his car, pulled out his own gun, started the engine, the defendant got in, and they drove off. When Young asked the defendant why he shot Franklin, defendant responded, "it's the third time somebody stolen from us, and (sic) just can't have it." Only then did Young see defendant with the .38 caliber gun that defendant threw away soon thereafter. Young denied shooting the victim or seeing the victim pull a gun.

## B. Testimony of Bobby Gerald Wright and Joelean Magraff

Bobby Gerald Wright testified that he was in the trailer bedroom with his girlfriend, Joelean Magraff, when Franklin was shot. He testified that he heard Young's voice, but not the defendant's. He denied hearing anyone say, "[b]ye, Melvin."

Magraff testified that she, too, heard a voice that sounded like Young's. Although she identified the voice as Young's in her statement to Investigator Dickey near the time of the incident, by trial she was unsure. However, she was certain she did not hear or see anyone else in the trailer; nor did she hear anyone say, "[b]ye, Melvin."

3

## C. Testimony of Law Enforcement

Investigator Dickey testified that he recovered a .38 caliber gun using information provided by Young. Robert E. McFadden, a Tennessee Bureau of Investigation (TBI) forensic scientist specializing in latent fingerprints, testified that he found no fingerprints on this weapon. Donald Carmen, a TBI forensic scientist specializing in firearms identification, testified that the two bullets recovered from the victim's body exhibited the same "class characteristics" as the test bullets fired from the .38. However, he could not determine whether there was a match of "individual characteristics" because the bullets recovered from the victim's body were damaged in a manner consistent with their having struck bone.

## D. Testimony of Defendant

Defendant also testified at trial and acknowledged ownership of the gun found by Investigator Dickey. He stated that he bought it from Young about two years earlier. Defendant testified that Young went to the victim's trailer alone, returned a while later, and told defendant that he had shot Melvin Franklin. Defendant alleged that they worked on a story together in which he would admit to shooting the victim. The defendant claimed that he "was trying to help out a friend" and that, because he had no prior record, he thought "it wouldn't be as bad on me." For this reason, defendant claims he stuck to the story although Young did not.

Defendant also acknowledged the contents of the taped phone conversation with Young. But, he averred that when Young asked him if anyone else knew that he (the defendant) shot Franklin besides him (Young), that he thought Young was asking if anyone else knew that Young had shot the victim. He admitted saying, "be sure to tell [the police]; be sure to remember that we went to get my gun and Clarence's 40 or $50.00, and he pulled that damn gun out on me and I took it away from him." The defendant denied shooting Melvin Franklin.

4

## II. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the evidence is insufficient to support his conviction. When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). It is the defendant's burden to illustrate to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. State v. Cabbage, 571 S.W.2d at 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

In August 1996, the time at which the instant offense was committed, first degree premeditated murder was defined as a "premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1) (Supp. 1996). A premeditated killing is one "done after the exercise of reflection and judgment" and where "the intent to kill [was] formed prior to the act itself." Tenn. Code Ann. § 39-13-202(d). Premeditation does not require that the purpose to kill pre-exist in the defendant's mind for any definite period of time. *Id.* However, the defendant's state of mind at the time he decided to kill "must be carefully considered in order to determine whether [he] was sufficiently free from

5

excitement and passion as to be capable of premeditation." *Id.*

In this case, the proof established that the victim was shot twice from behind. Young testified that he and the defendant went to the victim's home to recover some money and that, while they were there, the defendant shot the victim, firing about four shots. Young further testified that, when asked why defendant shot Franklin, defendant responded it was because the victim had stolen from them.

Young also testified that he saw the defendant throw away the murder weapon which the police later found with his assistance. The bullets recovered from the victim's body had the same "class characteristics" as the recovered weapon, and the defendant admitted the gun was his.

Finally, defendant admitted to shooting the victim in the taped phone conversation with Young and in his statement to Investigator Dickey. Under the standards for determining the sufficiency of the evidence on appeal, this proof is sufficient to support the defendant's conviction for premeditated first degree murder.

Therefore, this issue has no merit.

### III. TAPED PHONE CONVERSATION

The defendant also contends that the trial court should have suppressed his taped phone conversation with Young. The conversation took place after Investigator Dickey coached Young regarding what questions to ask defendant. Dickey was with Young when the call was made and simultaneously listened to and recorded it.

Defendant argues that this activity violated his Sixth Amendment right to counsel in that it was improper for Young, "acting as a tool of the police department, to interrogate [him] under the guise of a phone call between friends." We disagree.

The Supreme Court of Tennessee has held that the right to counsel does not attach until adversary judicial proceedings have been initiated. State v.

6

Mitchell, 593 S.W.2d 280, 286 (Tenn. 1980); *see also* State v. Meeks, 876 S.W.2d 121, 127 (Tenn. Crim. App. 1993). "Initiation" occurs upon the issuance of a formal charge, i.e., an arrest warrant, a preliminary hearing or the issuance of an indictment or presentment. State v. Mitchell, 593 S.W.2d at 286.

In this case, the phone call was made during the investigation of the homicide. At that point, the only evidence of defendant's involvement was a claim by their primary suspect who was already charged with the crime. The police were entitled to investigate Young's allegations before placing the defendant under arrest. "'There is no constitutional right to be arrested.'" Clariday v. State, 552 S.W.2d 759, 769 (Tenn. Crim. App. 1976) (quoting Hoffa v. United States, 385 U.S. 293, 310 (1966)). Therefore, defendant's right to counsel was not violated by Young's phone call to him, or by the recording thereof. The trial court did not err in refusing to suppress this evidence.

This issue is without merit.

## IV. DEFENDANT'S CONFESSION

Finally, defendant avers that the trial court erred by refusing to suppress his statement to Investigator Dickey following his arrest. In this statement, the defendant confessed to shooting the victim.

### A. Pre-Trial Motion

At the pre-trial hearing on the motion to suppress, Investigator Dickey testified that: (1) while being processed, defendant asked to speak with his mother, but there was no mention of contacting an attorney; (2) defendant never asked for attorney Bob Massey or any other attorney; (3) after being given his *Miranda* warnings, defendant agreed to give a statement; and (4) defendant never indicated a desire to stop the interview.

Defendant testified at the hearing that: (1) during the booking process, he repeatedly asked to call his mother so she could contact an attorney for him; (2) he specifically mentioned the name of attorney Bob Massey; (3) he went into

7

Dickey's office where he was advised of his *Miranda* rights; and (4) he "told [Dickey] plenty of times I wanted to talk to my lawyer, but he was [sic] always say, 'in a while. In a while. Not right now.'"

Martha Slater, defendant's mother, testified that when she was finally allowed to see defendant, she asked him why he did not ask to see her. Defendant's response was that he *had* asked for her *and* attorney Bob Massey, but that the police refused both requests.

The trial court denied the motion to suppress but specifically declined to make any findings of fact regarding this issue as evidenced by the following exchange with defense counsel:

> THE COURT: Well, I'm interrupting you but I don't think it makes any difference whether he asked for an attorney or not in the hallway. The officer did what I taught him to do, had I been in an in-service training class. I would have said, take the defendant in there and read him his *Miranda* rights before you do another thing, after you get his fingerprints and his name and age and address, and whatever.

> MR. KOGER: Right. But I think, Your Honor, with all due respect, that the state of the law in Tennessee is -- it's one of these what I call magic words. When the defendant says, I want a lawyer --

> THE COURT: No, sir. You're wrong, if you think that's a state law.

> MR. KOGER: -- then everything stops until one of two or three things happen. Either the defendant gets a lawyer or the defendant initiates conversation.

> THE COURT: That's not true. The state of the law in Tennessee is that if Mr. Slater -- and I'm going to give him the benefit of the doubt. If he asked him, said, I'd like to talk to Bobby Massey [an attorney]. He said, okay, just wait a minute. Wait until we get through processing you.
> He got through processing him. He took him in the office. He set him down. He gave him his *Miranda* rights. And he waived his *Miranda* rights. And I don't know what he told Mr. Dickey, after he did that, but where is the beef?

> MR. KOGER: The beef is that when you say, I want to talk to Bob Massey [an attorney], that you have invoked your Sixth Amendment right to counsel, and the police can't touch you. They can't talk to you about anything.

> THE COURT: I'm going to overrule that motion. He gave him the *Miranda* rights. He gave him his *Miranda* rights at the proper time. I think he followed proper procedure.
> There is a question in my mind whether he ever asked for an

8

attorney. I don't know. He may have or he may not have. I don't know who to believe.

    MR. KOGER:    Judge, for the purpose of the record, Your Honor, when you say you are giving us the benefit of the doubt, does that mean that you are making a finding of fact that he did, in fact, ask for an attorney.

    THE COURT:    No, sir. I'm making a finding of fact that one said yea and one said nay, and I don't know which one to believe. I don't think it makes any difference if he did.

We respectfully disagree with the trial court's conclusion that it was irrelevant whether or not the defendant requested legal counsel prior to being *Mirandized*.

### B. Right To Counsel

There is a Sixth Amendment right to counsel that attaches after initiation of adversarial proceedings. Michigan v. Jackson, 475 U.S. 625, 629, 106 S.Ct. 1404, 1407, 89 L.Ed.2d 631, 638 (1986). In Tennessee, issuance of an arrest warrant triggers such "initiation." State v. Huddleston, 924 S.W.2d 666, 669 (Tenn. 1996); State v. Mitchell, 593 S.W.2d at 286. Thus, if a defendant requests counsel during the booking process and after his arrest pursuant to an arrest warrant, police-initiated interrogation is forbidden. Michigan v. Jackson, 475 U.S. at 630, 632. Any subsequent statement made by a defendant as a result of such police-initiated interrogation must be suppressed regardless of whether the defendant executed a *Miranda* waiver. *Id.* at 636.

There is also a Fifth Amendment right to counsel that attaches during custodial interrogation. Edwards v. Arizona, 451 U.S. 477, 481-82, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Again, if a defendant requests counsel while being given his *Miranda* warnings or during custodial interrogation, the interrogation must cease. *Id.* at 482; State v. Huddleston, 924 S.W.2d at 669. Any subsequent statement made by a defendant as a result of police-initiated interrogation must be suppressed. Edwards v. Arizona, 451 U.S. at 484-85.[2]

---

[2] An equivocal or ambiguous request for counsel does not trigger the Edwards requirement under the Fifth Amendment. Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); State v. Huddleston, 924 S.W.2d 666, 669-70 (Tenn. 1996).

## C. Necessity for Remand

Defendant's testimony directly contradicted the testimony of Investigator Dickey. Defendant testified he repeatedly asked for counsel. Dickey testified that defendant said "[n]othing directed toward an attorney." A determination of facts is necessary before this Court can address this issue. The trial court declined to make findings. As an appellate court, we are unable to make findings of fact. Further, under the circumstances, it would not be appropriate to simply remand for the entry of findings based upon the previous hearing. Thus, this case must be remanded to the trial court for another hearing on the motion to suppress.[3]

## V. CONCLUSION

Based upon the foregoing, the judgment of conviction must be VACATED and the case REMANDED for another hearing on the motion to suppress.

If the trial court determines upon remand that defendant did not request counsel, it shall enter an order accordingly and reinstate the judgment of conviction. Defendant may then appeal that issue to this Court. If the trial court determines that defendant did request counsel, it should grant a new trial and suppress defendant's statement.[4]

The judgment of the trial court is affirmed as to the other issues raised in this appeal.

_____
**JOE G. RILEY, JUDGE**

---

[3]We have examined the record in an effort to determine whether the admission of defendant's confession was harmless error should it be determined to be error at all. We are unable to conclude that the jury would necessarily have reached the same result without the defendant's confession.

[4]A similar procedure was followed in State v. William Chouinard, C.C.A. No. 03C01-9311-CR-00357, McMinn County (Tenn. Crim. App. filed February 9, 1995, at Knoxville); *rehearing denied* August 8, 1995.

**CONCUR:**


(Not Participating)_____
**PAUL G. SUMMERS, JUDGE**



_____
**L. T. LAFFERTY, SENIOR JUDGE**