IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 3, 2000

## STATE OF TENNESSEE v. JESSE C. GOODMAN, JR.

**Direct Appeal from the Circuit Court for Hickman County**
**No. 99-5109CR-I      Timothy L. Easter, Judge**

_____

**No. M1999-02132-CCA-R3-CD - Filed December 7, 2000**

_____

The defendant, Jesse C. Goodman, Jr., was convicted by a Hickman County jury of one count of aggravated assault, a Class C felony, three counts of reckless endangerment, a Class E felony, and one count of assault, a Class A misdemeanor. All counts arose out of a single incident of domestic violence, with ramifications that included a four-hour standoff between the defendant and five law enforcement officers. The defendant was sentenced as a Range II, multiple offender to nine years for aggravated assault; two years for each of the reckless endangerment convictions; and eleven months and twenty-nine days for assault. The sentences for aggravated assault and reckless endangerment were ordered to be served consecutively, and the misdemeanor conviction was ordered to be served concurrently as to the other sentences, for an effective sentence of fifteen years in confinement. In this appeal as of right, the defendant presents two issues: (1) Whether the evidence was sufficient to convict him of either aggravated assault or assault; and (2) Whether the sentences were appropriate, both as to length of the aggravated assault sentence and the consecutive manner of service of the aggravated assault sentence and the reckless endangerment sentences. We conclude that the convicting evidence was sufficient, both as to the aggravated assault charge and the assault charge. We further conclude that the nine-year sentence for aggravated assault was appropriate, as was the consecutive manner of service of the sentences for aggravated assault and reckless endangerment. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

John H. Henderson, District Public Defender, for the appellant, Jesse C. Goodman, Jr.

Paul G. Summers, Attorney General and Reporter; Marvin E. Clements, Jr., Assistant Attorney General; Ronald L. Davis, District Attorney General; and Robert Hassell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Hickman County Grand Jury returned a six-count indictment against the defendant, Jesse C. Goodman, Jr., including five counts of aggravated assault and one count of assault, as follows:

Count One     Aggravated assault of William S. Davis by causing him to "reasonably fear imminent bodily injury by use and display of a deadly weapon;"[1]

Count Two     Aggravated assault of Carl Hutchinson by causing him to "reasonably fear imminent bodily injury by use and display of a deadly weapon;"

Count Three     Aggravated assault of Larry Holman by causing him to "reasonably fear imminent bodily injury by use and display of a deadly weapon;"

Count Four     Aggravated assault of Frank Atkinson by causing him to "reasonably fear imminent bodily injury by use and display of a deadly weapon;"

Count Five     Aggravated assault of Wayne Qualls by causing him to "reasonably fear imminent bodily injury by use and display of a deadly weapon;"

Count Six     Assault of Mary Goodman by causing her to "reasonably fear imminent bodily injury."

All counts arose out of a single incident of domestic violence on November 5, 1998, with ramifications that included a four-hour standoff between the defendant and five law enforcement officers. The defendant was convicted by a jury of aggravated assault in Count One; of reckless endangerment in Counts Two, Three, and Five;[2] and assault in Count Six. The trial court sentenced the defendant as a Range II, multiple offender to nine years for aggravated assault, two years for each count of reckless endangerment, and eleven months and twenty-nine days for assault. The aggravated assault and reckless endangerment sentences were ordered to run consecutively as to each other but concurrently with the sentence for assault, for an effective sentence of fifteen years in the Tennessee Department of Correction.

---

[1]Minutes before trial was to begin, the State sought to amend the wording of the indictments in the first five counts, which, according to the indictment, required the State to show *both* "use" *and* "display" of a deadly weapon, contrary to the language of the statute which is in the alternative. The trial court was not persuaded by the State's argument and held the State to the wording of the indictment.

[2]Count four was voluntarily dismissed by the State.

In this appeal as of right, the defendant presents two issues for our review:

I.   Whether the evidence was sufficient to support the following convictions:

(1) Aggravated assault of William S. Davis; and

(2) Assault of Mary Goodman; and

II.  Whether the sentences were appropriate, both as to the length of the aggravated assault sentence and the consecutive manner of service of the aggravated assault sentence and the reckless endangerment sentences.

Based on our review of the entire record, we conclude that the evidence was sufficient to support convictions for both aggravated assault and assault. We further conclude that the defendant was appropriately sentenced for his crimes both as to length and manner of service.

## FACTS

Mary Goodman, who had been married to the defendant for some two months, testified that on the morning of November 5, 1998, she and the defendant drove from their farmhouse in Pleasantville, Tennessee, into town to buy beer. They purchased a twelve-pack of beer. Mrs. Goodman wanted to visit a friend, but the defendant wanted to go home with the beer. Mrs. Goodman dropped the defendant and the twelve-pack of beer off at their farmhouse at approximately 9:00 a.m., and she drove on to her friend's house.

Mrs. Goodman stayed at her friend's house for most of the day, where she consumed some five cans of beer before returning home around 4:00 p.m. The defendant, in the meantime, had consumed all twelve cans of beer from the morning trip to the store and now insisted that his wife go back for more. Before she went back down the highway, she "wanted a few hours to sober up a little bit." The defendant was in no mood to wait, and an argument ensued. The defendant started pacing and then began throwing things around the kitchen, becoming more enraged and flipping over the table and chairs. Mrs. Goodman questioned him about the medication he takes every day to control his behavior.[3] The defendant claimed that he had taken his medication that morning. Nevertheless, after the argument had gone on for nearly half an hour, the defendant finally went up to his wife, looked her "right in the eye," doubled up his fist, and hit her square in the face.

---

[3]The defendant testified at his sentencing hearing that he takes a prescription drug called Navane. The defendant's sister testified at the sentencing hearing that, without the medication, the defendant "gets delusional and he's not in reality whenever he's not on his medication."

At this point, Mrs. Goodman yelled for her three, teenaged children to get out of the house. Mrs. Goodman and the children went to a neighbor's house and called the police. Mrs. Goodman then went back down the road to wait for the police. Because her daughter required a dialysis machine that was in the farmhouse, Mrs. Goodman felt that she needed help to get the machine for her daughter and could not just wait the defendant out.[4]

Carl Hutchinson and William Davis, deputy sheriffs with the Hickman County Sheriff's Department, arrived on the scene first. Responding to what seemed to be a domestic problem, the deputies placed Mrs. Goodman in the backseat of their patrol car and drove up to the farmhouse. Hutchinson approached the front door, knocked, and asked the defendant to come out onto the porch to talk about the incident. Hutchinson testified that "I asked him to come out on the porch and he said, 'Come on up in here.' And I said, 'I can't do that. Just come out here on the porch.' And I told him that he wasn't under arrest and all that, and he said, 'Come on up in here motherfucker.'"

By this time, Deputy Davis was also on the porch. When the defendant slammed the door shut, it bounced back a bit, and Davis then pushed it all the way open and stepped inside. Davis saw the defendant pick up a weapon, which Davis knew was a shotgun or rifle.[5] Davis told the defendant to put the gun down, that he just wanted to talk to him. The defendant told Davis not to come into his house and then pointed the gun at Davis. Davis drew his weapon and yelled "Gun" to warn Hutchinson, whom he thought was right behind him. The two officers scattered to safety behind a well house in the front yard. Because they feared for the safety of Mrs. Goodman, still in the patrol car parked close to the house, they decided to move the car. Once the car was moved, Davis got on the patrol car's loudspeaker and again told the defendant that all they wanted to do was talk to him. At this point, the defendant fired the first shot. Dusk had settled, and the officers did not know exactly where the defendant was, but they were afraid that he was firing at them. They called for backup forces. In the meantime, hearing and seeing nothing and thinking the defendant might have taken his own life, Davis again spoke to the defendant over the loudspeaker. The defendant responded by firing the shotgun a second time.

Some ten minutes after the second shot was fired, Constable Wayne Qualls arrived to assist. Mrs. Goodman, who had been told to take better cover in a cow pasture, was taken back to the neighbor's house where her children were. Detective Larry Holman arrived shortly after Qualls, and later Sheriff Atkinson arrived on the scene. The sheriff had all patrol cars move back from the farmhouse and out to the main road. Qualls and Holman proceeded up to the farmhouse on foot. Holman moved to the kitchen door and called to the defendant in an attempt to get him to come out. The defendant yelled back, warning that if the deputy tried to come in, the defendant would shoot him. Holman and Qualls moved back to check in with the sheriff, and then the two deputies returned to positions at the farmhouse where they could again call to the defendant. Holman and Qualls tried

---

[4]At the time of trial, Mrs. Goodman's nineteen-year-old daughter had died.

[5]The weapon, a twenty-gauge shotgun given to Mrs. Goodman's daughter as a birthday present, was entered into evidence.

to talk the defendant into coming out. The defendant again threatened to kill them, calling the officers "pigs." At this point, the defendant fired another shot, this one breaking glass as it exited the house. The two deputies retreated back to where the other patrol cars were located on the main street. Sheriff Atkinson made one more effort to talk to the defendant over a loudspeaker, but the defendant responded by firing another shot.

By this time, it was dark, and nearly four hours had passed since the first deputies had arrived on the scene. Finally, the defendant's sister was brought to the scene in an effort to reason with the defendant. She was able to go into the farmhouse and convince the defendant to surrender. The defendant was then taken into custody.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant challenges the sufficiency of the convicting evidence as to the aggravated assault charge in Count One and the assault charge in Count Six.

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); see also Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). This rule applies to guilty verdicts predicated on direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence.[6] See State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Great weight is given to the result reached by the jury in criminal trials. A jury verdict accredits the State's witnesses and resolves all conflicts in favor of the State. See State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from the evidence. See id. at 803; see also State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Moreover, a guilty verdict removes the presumption of innocence that the defendant enjoys at trial and raises a presumption of guilt on appeal. See State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The defendant has the burden of overcoming this presumption of guilt. See id.

---

[6]The defendant misstates the law in Tennessee when claiming that "[t]here must be more than circumstantial evidence consistent with guilt in order to support a conviction in a criminal case." To the contrary, a "criminal offense may be established exclusively by circumstantial evidence." State v. McAfee, 737 S.W.2d 304, 306 (Tenn. Crim. App. 1987) (citations omitted). However, before a defendant may be convicted of a crime based on circumstantial evidence only, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971).

## A. Aggravated Assault

The jury found the defendant guilty of the aggravated assault of Deputy William S. Davis. The defendant contends that the State failed to prove the requisite mental element of the offense and that the evidence was, therefore, insufficient to convict him.

Aggravated assault occurs when a person "[i]ntentionally or knowingly commits an assault as defined in § 39-13-101 and . . . [u]ses or displays a deadly weapon[.]" Tenn. Code Ann. § 39-13-102(a)(1)(B) (1997). An assault occurs when one "[i]ntentionally, knowingly or recklessly causes bodily injury to another [or] [i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury[.]" Id. § 39-13-301(a)(1), (2). According to the indictment, the defendant "unlawfully and feloniously, intentionally, knowingly, or recklessly, did cause William S. Davis to reasonably fear imminent bodily injury by use and display of a deadly weapon, to-wit: a firearm, in violation of Tennessee Code Annotated 39-13-102."

First, we recognize that our supreme court has stated that it has relaxed the pleading requirements for indictments. See Ruff v. State, 978 S.W.2d 95, 100 (Tenn. 1998); State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997). The indictment must still "state the facts constituting the offense in ordinary and concise language . . . ." Tenn. Code Ann. § 40-13-202.

In the present case, as we noted above, the language of the indictment failed to precisely track applicable statutory language. The State was required to show that the aggravating element of the assault was the "use *and* display" of a deadly weapon rather than "use *or* display" as stated in the statute. Also, the indictment, by including "recklessly" as a mental element erroneously provided for a less stringent standard than the statute requires when the victim is caused to "reasonably fear imminent bodily injury," which standard is stated, in the alternative, as "intentionally or knowingly."[7]

The trial court, holding the State to the wording of the indictment and requirements of the applicable statute, correctly instructed the jury as follows:

> Any person who commits the offense of aggravated assault is guilty of a crime.

---

[7]We note that as a general rule "two distinct offenses cannot be charged in the same indictment," State v. Jefferson, 529 S.W.2d 674, 678 (Tenn. 1975), *abandoned on other grounds by* State v. Mitchell, 593 S.W.2d 280 (Tenn. 1980). Here, only one offense, aggravated assault, was charged in Counts One through Five and one offense, assault, in Count Six. "Recklessly" is one of the "different intents" with which the offenses of aggravated assault or assault may be committed and, therefore, may be alleged without charging a different offense. See Tenn. Code Ann. § 40-13-206(a). Although not an issue raised by the defendant, because no bodily harm was alleged in any of the counts of the indictment, "recklessly" would not have been sufficient to establish the mens rea requirement where the injury is of the kind that "causes another to reasonably fear imminent bodily injury."

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant intentionally or knowingly caused another to reasonably fear imminent bodily injury; and

(2) that the defendant used and displayed a deadly weapon.

A person acts intentionally with respect to the nature of his conduct "when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-302(a). A person acts knowingly "when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Id. § 39-11-302(b). "When acting knowingly suffices to establish an element, that element is also established if a person acts intentionally." Id. § 39-11-301(a)(2). Proof that a person acted intentionally would, therefore, satisfy the mens rea requirement of aggravated assault.

The defendant does not contest proof as to the aggravating factor itself, that is, the use and display of a deadly weapon. The defendant contends only that the State failed to show that he had the requisite mens rea to commit the crime of aggravated assault. We disagree. The record contains ample proof from which the jury could have concluded that the defendant acted intentionally. Deputy Davis testified to the following:

Q. What did you see the defendant do with the gun?

A. At first he was just picking the gun up, he kind of - - he didn't really have good control of it, he was just picking it up. And I told him to put the gun down, I just wanted to talk to him. And he told me again not to come in his house, and then he picked the gun up to point it around at me like he was going to shoot me.

Davis further testified that he "got scared" because he knew that the "little door I was behind wasn't gonna stop that bullet." The defendant testified on cross-examination at the sentencing hearing to the following:

Q. Did you fire at anybody?

A. No, sir, I didn't. I'm an excellent shot and I don't miss. I shot a few windows out of my own home because I was still angry. I knowed (sic) I was going to jail, but I was just going to show my hind end a little bit.

-7-

Q. Well, when you fired the shots, did you fire them knowing there were police that you could hit with the shots?

A. I was extremely careful not to hit one of the officers. Even though I'm mental, I'm not totally ignorant on the law, and I know it's automatic death penalty to shoot a police officer, whether you kill them or not, no plea bargain.

We determine that the evidence in the record supports either conclusion and is sufficient to prove beyond a reasonable doubt the mens rea element of aggravated assault. This issue is without merit.

### B. Assault

The jury found the defendant guilty of the assault of his wife, Mary Goodman, based on the domestic incident that set in motion the extended events from which all other counts arose. The defendant argues that the State failed to show that he intentionally or knowingly caused Mrs. Goodman to reasonably fear imminent bodily injury and that the evidence is therefore insufficient to convict him of assault.

The indictment in Count Six states that the defendant "unlawfully, intentionally and knowingly, caused one Mary Goodman to reasonably fear imminent bodily injury, in violation of Section 39-13-101, Tennessee Code Annotated."[8]

Testimony presented at trial indicated that the defendant was angry that Mrs. Goodman would not immediately go purchase more beer; that he became increasingly violent as they argued, tossing over furniture; that he finally looked the victim directly in the eyes and punched her in the face with his fist. The victim testified to bleeding from her nose and feeling dizzy. She testified further to the following:

A. I yelled for my kids to run, it's time to go. It was time to leave. I wanted to get them away.

Q. Why is that?

A. Because, that's the only thing you can't replace.

Q. Why did you want to leave?

---

[8]The State was unable to explain why the indictment in this case did not allege bodily injury according to 39-13-101(a)(1) since there was proof that the defendant struck the victim in the face causing bleeding, but rather alleged only "intentionally or knowingly causing another to reasonably fear imminent bodily injury," pursuant to 39-13-101(a)(2).

A.  Safety, get away from the threat.  It didn't occur to me to be offensive (sic).

Q.  What did you think he was going to do?

A.  Continue the abusive act if we didn't get away.  I thought it would escalate, might get worse.  He might beat me more, he might turn and start on any or all of my children.

We conclude that there was sufficient evidence for the jury to find that the defendant acted intentionally when he struck the victim in the face and that such an act caused the victim to reasonably fear that she was in danger of being beaten again and suffering more bodily injury at the hands of the enraged defendant if she did not immediately escape.  This issue is without merit.

## II.  Excessive Sentence

The defendant asserts that his sentence is excessive both as to the length of his sentence for aggravated assault and the consecutive manner of service of his sentences for aggravated assault and reckless endangerment.

The standards applicable to our review of the defendant's sentencing issues are well established.  When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct."  Tenn. Code Ann. § 40-35-401(d).  This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts.  State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994);  State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), perm. app. denied (Tenn. 1994);  State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993).  However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-103 and -210;  State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), perm. app. denied (Tenn. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous. Sentencing Commission Cmts. to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentences imposed by the trial court are erroneous.

## A. Length of Sentence For Aggravated Assault

The defendant contends that his sentence of nine years for the aggravated assault of Deputy Davis is excessive and should be reduced to six years.[9] The defendant fails to point to any alleged error made by the trial court to support this contention. The defendant does not contest the trial court's determination that he should be sentenced as a Range II, multiple offender. The defendant does not contest the application by the trial court of two enhancement factors: (1) "[T]he victim of the aggravated assault was a law enforcement officer[,]" Tenn. Code Ann. § 39-13-102(d); and (2) "The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range[,]" id. § 40-35-114(1).[10] Neither does the defendant contend that the trial court misapplied any mitigating factor, or failed to apply an appropriate mitigating factor, or inappropriately weighed enhancement factors and mitigating factors.

The defendant has failed to meet his burden of illustrating to this court any error made by the trial court in determining the appropriate length of his sentence for aggravated assault. We conclude that the trial court appropriately sentenced the defendant to nine years for aggravated assault.[11]

---

[9] The range of punishment for a Range II, multiple offender who commits a Class C felony is six to ten years.

[10] The defendant's criminal record, dating from the 1980s, includes convictions for DUI (three convictions), malicious mischief, disorderly conduct, public intoxication (three convictions), marijuana possession or sale (four convictions), possession of Schedule VI drugs (two convictions), and assault of Mary Goodman prior to their marriage. As to the assault charge, the defendant testified that he "slapped" Goodman.

[11] Our review indicates that the trial court addressed all relevant facts and circumstances and considered appropriate sentencing principles. The trial court began its determination of the defendant's sentence for aggravated assault, a Class C felony in this case, at the presumptive minimum of six years and enhanced the sentence according to two factors. The trial court gave little weight to the mitigating factors under the catchall factor (13). See Tenn. Code Ann. § 40-35-113(13).

## B. Manner of Service of Sentences

At the sentencing hearing, the trial court ordered the defendant to serve his two-year sentences for the reckless endangerment of Deputy Hutchinson, Detective Holman, and Constable Qualls consecutively, as to each other, and also consecutively to his sentence of nine years for the aggravated assault of Deputy Davis. The trial court ordered that the sentence for the assault of Mary Goodman be served concurrently to the other sentences. The defendant, therefore, received an effective sentence of fifteen years in the Department of Correction.

At the sentencing hearing, the trial court stated the following concerning consecutive or concurrent sentences:

> Turning now to the question of concurrent or consecutive sentencing. Under 40-35-115 regarding multiple convictions, the court has the discretion to order sentences to run consecutively if it finds by a preponderance of the evidence one of several factors set out in that statute. One of which is that the defendant is an offender whose record of criminal activity is extensive and that the defendant is sentenced for an offense committed while on probation. And I find both of those factors to apply in this case by a preponderance of the evidence. Additionally, I find that an extended sentence is necessary to protect the public against further criminal conduct by this defendant, and that the consecutive sentencing is reasonably related to the severity of the offense committed in this case and that this is a case where consecutive sentencing is appropriate under the standards set out both in the Code as well as *State versus Wilkerson.*

The defendant asserts that his sentences should have been ordered served concurrently. He argues specifically that the trial court misapplied factors to support consecutive sentencing pursuant to Tennessee Code Annotated Section 40-35-115, including the following: "The defendant is an offender whose record of criminal activity is extensive; . . . The defendant is sentenced for an offense committed while on probation . . . [.]" Id. § 40-35-115(b)(2), (6). The defendant asserts further that the trial court inappropriately applied two additional factors: "[T]hat an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences must reasonably relate to the severity of the offenses committed." State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). As the Wilkerson court noted, these last two considerations apply only when the trial court has determined the defendant to be a "dangerous offender" pursuant to factor (4) of 40-35-115(b), that is, "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high."

Taking the defendant's assertions in order, we conclude that the record fully supports the trial court's reliance on the facts that this defendant has an extensive record of criminal activity and that

the defendant is sentenced for an offense committed while on probation. The defendant testified that at the time of this offense, he was on probation for another assault against his wife. As far as the defendant's criminal activity is concerned, the trial court found the facts presented at the sentencing hearing to be "shocking." The following exchange between the defendant and the trial court occurred:

> THE COURT: When is the last time you smoked marijuana?
>
> THE WITNESS: Yesterday evening.
>
> THE COURT: So if I had you tested right now, you're going to test positive?
>
> THE WITNESS: Yes, sir.
>
> THE COURT: You knew you were coming to court today?
>
> THE WITNESS: Yes, sir.

We agree with the defendant that the trial court was not sentencing the defendant as a "dangerous offender," and therefore its reliance on the two Wilkerson factors was misplaced. Nevertheless, such error is harmless because the preponderance of the evidence supports the trial court's ordering that the defendant serve his sentences consecutively pursuant to Tennessee Code Annotated Section 40-35-115(b)(2) and (6).

## CONCLUSION

We conclude that the evidence was sufficient to support the convictions for aggravated assault and assault. We further conclude that the trial court appropriately sentenced the defendant to an effective sentence of fifteen years in confinement. The judgment of the trial court is affirmed.

ALAN E. GLENN, JUDGE

-12-