# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 2, 2012

## RONALD WOODS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 08-02953     Chris Craft, Judge**

**No. W2012-00563-CCA-R3-PC  - Filed February 1, 2013**

A Shelby County grand jury indicted petitioner, Ronald Woods, for three counts of assault. Petitioner pleaded guilty to one count of assault, and the State agreed to dismiss the two remaining counts. During the plea hearing, petitioner also pleaded guilty to several offenses in an unrelated case that was pending in the criminal court. He received an agreed-upon effective sentence of six years, eleven months, and twenty-nine days for both cases. Petitioner requested post-conviction relief, alleging: (1) that the State engaged in vindictive prosecution; (2) that he received ineffective assistance of counsel; (3) that his guilty plea was involuntary; and (4) that he was denied due process of law. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JEFFREY S. BIVINS, JJ., joined.

Terrell L. Tooten, Memphis, Tennessee, for the appellant, Ronald Woods.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; and Abby Wallace, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Procedural History and Facts

In the instant case, a Shelby County grand jury indicted petitioner for three counts of assault based on alternate theories for an event that transpired on September 14, 2007. On November 12, 2009, he entered a combined guilty plea to one count of assault as charged in

the indictment (No. 08-02953) and five counts from a separate indictment (No. 07-05925), including two counts of aggravated assault, evading arrest, driving under the influence, fourth offense, and reckless driving.[1] The five counts in indictment number 07-05925 ran concurrently with each other, and the assault charge in indictment number 08-02593 ran consecutively to the offenses in the five-count indictment.

Petitioner filed a pro se petition for post-conviction relief, after which appointed counsel filed an amended petition. The post-conviction court held a hearing on December 1, 2011, and denied relief by written order dated January 13, 2012.

At the evidentiary hearing, petitioner presented trial counsel as his first witness. Trial counsel testified that he represented petitioner at the hearing on petitioner's guilty plea to an assault charge. Trial counsel was petitioner's second attorney in this matter. While trial counsel could not recall whether he or petitioner's prior attorney provided petitioner with a copy of the discovery information, he testified that he reviewed the discovery information with petitioner and examined the proof that the State had against him. Petitioner requested that he file several motions, and trial counsel filed the "necessary motions that needed to be filed." Petitioner also filed several pro se motions that trial counsel declined to pursue. Specifically, petitioner requested that trial counsel file a motion to dismiss for lack of a speedy trial and a motion for a bill of particulars, but counsel believed the motions to be frivolous and did not file them. Trial counsel believed that petitioner understood the reasons for not filing some of the requested motions.

Trial counsel recalled that petitioner entered a guilty plea to assault and received a sentence of eleven months and twenty-nine days, which was the same sentence he would have faced had he proceeded to trial. Trial counsel did not advise petitioner to plead guilty. Counsel explained the background of petitioner's case:

> [Petitioner] was originally indicted . . . [on] two counts of criminal attempt murder 2nd degree[,] . . . intentionally evading arrest[,] . . . habitual motor vehicle driver offender[,] . . . alternate theories of DUI[,] . . . [and] reckless driving.

---

[1]Indictment number 07-05925 and the judgments in that case are not included in the record because the resulting convictions are not before us in the instant appeal. The only information available to this court regarding said indictment is contained in the combined plea agreement and the post-conviction court's order denying relief. Thus, the court is only aware of the charges to which petitioner entered guilty pleas, not the original charges. In addition, both parties address a charge of driving while an habitual motor offender in their briefs. The disposition for this count is not reflected in the record in this case. The remaining two counts of assault as charged in indictment number 08-02593, as well as a third indictment for escape, number 07-05924, were dismissed as part of the plea agreement.

Then when he was arrested on those cases he was taken to the . . . Felony Investigation Room on the . . . tenth or eleventh floor of this building[.] [Petitioner] is alleged to have escaped. They came into the room where he was shackled, they found a neck brace[,] . . . they found his shackles[,] and [petitioner] had disappeared.

Later on that day[,] [petitioner] apparently fell through the ceiling of 201 Poplar onto a Homicide Detective's desk[,] and he was charged with escape. . . . He made bonds on both of those.

Because of the nature of the criminal attempt[,] there were two officers that were injured, and the DUI, and because of the nature of that[,] it caught the interest of the news . . . . Andy Wise[ ] was working at News Channel 3 at the time [and] was investigating why [petitioner] with his terrible driving record had a bond and why he was out on bond.

And he followed [petitioner] around the courtroom trying to get an interview with him. The alleged assault occurred right here outside on Poplar at 201.

The State offered to reduce the attempted second degree murder counts to aggravated assaults and further gave petitioner the option of pleading guilty to either escape or assault. Trial counsel advised petitioner to plead guilty to escape because he would only serve thirty percent of the one-year sentence rather than fifty percent of "misdemeanor time" for the assault charge. Trial counsel was surprised that petitioner chose to plead to assault because he had insisted on going to trial on the charge and had indicated a desire to sue Andy Wise.

Trial counsel did not list any pretrial jail credit on the judgment sheet. He testified that he had previously done so in other cases but had been instructed not to do so anymore. The clerk's office, specifically the "jail credit clerk," was responsible for computing the pretrial jail credits. Although trial counsel did not write the credit on the judgment, he advised petitioner that he would be entitled to credit for time served on the assault. However, because petitioner was out on bond when he committed the assault, he did not have a great deal of jail credit. After the guilty plea submission, petitioner never complained to trial counsel about the computation of jail credit.

On cross-examination, trial counsel confirmed that he was not petitioner's original attorney and that he became involved in the case after petitioner was charged with assault. He received all of the discovery from petitioner's prior attorney. He also received a DVD of the actual assault. Trial counsel evaluated the State's evidence with petitioner in light of

the elements of each of the charged offenses. He explained to petitioner that the State indicted him for three counts of assault based on different theories. He also discussed the range of punishment for each charge and potential motions or legal issues.

Trial counsel did not pursue the speedy trial motion that petitioner filed because the case was already set for trial when he became involved. The first case set for trial was the escape charge, but the case was not tried as scheduled due to the assistant district attorney's calling in sick. They settled all of petitioner's cases prior to the next trial setting. Otherwise, trial counsel would have filed several motions, including motions in limine. However, filing said motions was unnecessary because the matters were resolved.

Trial counsel discussed potential defenses with petitioner, and they were prepared to advance self-defense at trial. Trial counsel investigated the case and was ready to proceed to trial when petitioner entered his guilty pleas. Had petitioner pleaded guilty to the escape charge, the State would have dismissed all of the misdemeanor assaults. However, petitioner elected to plead guilty to one of the assault counts and have the State dismiss the escape charge. Trial counsel reiterated that it was petitioner's decision to plead guilty to assault rather than escape, and trial counsel was surprised by the decision. Trial counsel opined that petitioner decided to plead to assault because he thought he would receive less time despite counsel's advice and because he wanted to avoid an additional felony conviction on his record.

Petitioner testified that he filed the post-conviction petition because he felt he was not advised properly and because he felt "blackmailed" into pleading guilty to assault. He stated that trial counsel told him to plead guilty because if he did not enter a guilty plea to the assault charge, the prosecutor would have rescinded all other plea offers, and petitioner would have had to stand trial on all offenses. He claimed that his attorney further informed him that if they pursued the motions petitioner requested, the prosecutor would have rescinded all settlement offers.

Petitioner denied that trial counsel advised him that he had the choice of pleading guilty to either assault or escape. He believed he was facing a three-year sentence on the three counts of assault and did not understand that the three counts were alternate theories of criminal liability. He also denied that the trial court explained to him that he was not facing a three-year sentence.

Petitioner claimed that trial counsel never provided him with discovery. He was concerned about the video because at one time, trial counsel allegedly told him that he received the video from petitioner's prior attorney, but as the trial date drew near, trial counsel stated he did not have the video. Petitioner filed several motions on his own behalf,

-4-

but trial counsel declined to argue the motions, stating that if petitioner pursed the motions, he would not have an opportunity to plead guilty.

Petitioner reviewed the paperwork summarizing his guilty plea before he signed it. He testified that he asked trial counsel about jail credits and was led to believe that the pretrial jail time would be credited to his sentence. He believed he had eighteen months of pretrial jail credit. He stated that the trial judge did not inform him that the eighteen months would not be credited to him.

Petitioner felt that his case was unfairly prosecuted. He testified that Andy Wise reported the incident to the police, but the video supported the fact that Andy Wise assaulted petitioner. Petitioner explained that he left the scene immediately after the incident but was pursued and brought back to the scene. A lieutenant from "201" responded to the location, viewed the video, and released petitioner. He did not believe that he would be charged with an offense stemming from the incident. Petitioner later returned to "201" to obtain a warrant against Andy Wise and learned that Wise had already obtained a warrant against him. When petitioner realized there was a warrant against him, he turned himself in to authorities on or about September 18, 2007, and was released after he made a $250 bond. He appeared in court the following morning for arraignment. Scott Bearup, who was the prosecutor in his other cases but was not assigned to the courtroom in which petitioner appeared, entered and filed a motion to increase petitioner's bond to $5,000. Petitioner stated that even the prosecutor assigned to that courtroom was surprised by Mr. Bearup's motion.

Petitioner felt that the State "unfairly pursued" him by prosecuting this case and that trial counsel advised him poorly when counsel recommended that he forgo his right to a trial in general sessions court and instead have his case bound over to criminal court. Petitioner alleged that the State offered him a dismissal with costs in general sessions court and regretted having not accepted it. He testified that knowing what he knows now, he would have stood trial in general sessions court, and if he lost, he would have appealed to the criminal court for a trial de novo. When the State pursued petitioner's case in criminal court, trial counsel allegedly became "perturbed." He explained to petitioner that simple assault cases like his were routinely dismissed, but because his case involved a "public figure," the State "perceive[d] that [petitioner] would pursue . . . litigation . . . [and would] not drop this case."

Petitioner explained the basis for his opinion that the State unfairly pursued his case. He stated that he was not indicted for his first case involving the attempted second degree murder of a police officer until eighteen months after his arrest. At petitioner's first court appearance, he witnessed the police officer, Scott Bearup, and Andy Wise having a conversation. He overheard Mr. Bearup ask Mr. Wise if he could capture petitioner on

camera. Mr. Bearup allegedly told Mr. Wise, "[I]f [you] could get [petitioner] on video saying that [he] would leave the State or if [he] . . . had intention of skipping bond[,] . . . [I] would revoke [his] bond and incarcerate [him]." In fact, the only questions Mr. Wise asked petitioner during the assault episode were "are you leaving the State?" and "are you skipping out on us?" Mr. Wise never asked petitioner about the offenses for which he had been indicted. In sum, petitioner felt "harassed, hounded, [and] persecuted" because of the status of the alleged victim.

On cross-examination, petitioner agreed that "[o]stensibly, yes," he could have stood trial on the assault charge, but "in reality, no," because he had been awaiting trial for over two years on a charge that carried a possible punishment of eleven months, twenty-nine days. He was told that if he did not plead guilty on that particular day, his cases would be reset for the following May, which was seven months in the future. He also clarified that he was arrested for aggravated assault of a police officer but was indicted for attempted second degree murder. Petitioner acknowledged that he did not have the right to a plea agreement and that the State was not obligated to offer him a plea bargain. He admitted that during the plea submission hearing, he did not inform the trial court that he felt he was being forced into accepting the plea agreement or that he was being "blackmailed" into pleading guilty. However, petitioner stated that he sent the judge a letter prior to the plea submission hearing in which he explained the situation. He did not bring it to the court's attention on the day he entered the plea because he "felt it was a fruitless exercise at that point." He felt that the only result was that he would be sent back to jail for an "indeterminate amount of time to wait for whatever future trial would appear."

## II. Analysis

In the post-conviction court, petitioner alleged: (1) that his guilty plea was involuntary; (2) that he received ineffective assistance of counsel; (3) that the State engaged in vindictive prosecution; and (4) that he was denied due process of law. On appeal, petitioner has framed his claim of vindictive prosecution as a due process concern, and it will be addressed as such.

## A. Involuntary Guilty Plea

A guilty plea must be entered knowingly, voluntarily, and intelligently. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because appellant has been denied due process. *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n.5). To make such a determination, the court must examine "whether the plea represents a voluntary and

intelligent choice among the alternative courses of action open to the defendant." *Id.* Courts should consider the following factors when ascertaining the validity of a guilty plea: (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. *Id.* (citing *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006)). "[A] plea is not voluntary if it results from '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Id.* at 563 (quoting *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)). Thus, the transcript of the plea colloquy must affirmatively show that a defendant's decision to plead guilty was both voluntary and knowledgeable. *Id.* The trial court must ensure that the defendant entered a knowing and intelligent plea by thoroughly "'canvass[ing] the matter with the accused to make sure that he has a full understanding of what the plea connotes and of its consequences.'" *Id.* (quoting *Blankenship*, 858 S.W.2d at 904).

Petitioner alleges that his guilty plea was involuntary because he was never made aware that he was not facing prosecution on all three counts of assault as the indictments alleged alternate theories. Petitioner fails to make clear the result his misunderstanding or lack of knowledge in this regard had on the voluntariness of his plea. He appears to argue that because he believed he was facing convictions and sentences for three assault charges, he was led to believe that a plea agreement involving only one count of assault at the maximum sentence was a "bargain" compared to what he could have faced, and accordingly, his plea was not knowingly, intelligently, and voluntarily entered.

The post-conviction court ruled:

> The petitioner again alleges that his plea to the assault indictment should be set aside because he was unaware that the State could not convict him of all three counts. This court again rejects this allegation, finding the attorney's testimony that he explained this to the petitioner to be credible and the petitioner's testimony to the contrary not credible.

(internal citations omitted). The record does not preponderate against the post-conviction court's findings of fact. *See Rigger v. State*, 341 S.W.3d 299, 307 (Tenn. Crim. App. 2010) (citations omitted). Indeed, trial counsel advised petitioner that he could only be convicted of one count of assault because the State had indicted him on alternate theories. Petitioner's testimony contradicted that of trial counsel, and the post-conviction court credited trial counsel's testimony and found petitioner's testimony not credible. We will not disturb the post-conviction court's determination of credibility of the witnesses, as it is in the better

position to make such judgments. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citations omitted). Because this was the sole basis upon which petitioner claimed his guilty plea was involuntary, we conclude that petitioner is not entitled to relief.

It should be noted that on appeal, petitioner advances a different theory in support of the involuntariness of his guilty plea. He now claims that the plea was involuntary because he was misadvised or not advised about the application of pretrial jail credit to his sentence. The presumed implication is that he would not have entered a guilty plea to a sentence of eleven months, twenty-nine days had he known he would not receive the seventeen-month pretrial jail credit. The post-conviction court did not have an opportunity to pass judgment on this issue. Petitioner is limited to the issues as he presented them in his post-conviction petition and addressed them at the post-conviction hearing. *Mario Deangalo Thomas v. State*, No. W2004-01704-CCA-R3-PC, 2005 WL 1669898, at *4 (Tenn. Crim. App. July 18, 2005).

Notwithstanding the procedural defect in petitioner's raising this claim for the first time on appeal, the post-conviction court recognized that petitioner touched on this issue in his testimony and noted in its order that "[e]ven though never raised in his petition or amended petition, this allegation is without merit. These jail credits were applied to his 6[-]year sentence, and were the subject of an order [of] this court entered September 2, 2010, on a prior petition for writ of habeas corpus." The trial court correctly applied pre-trial jail credit to petitioner's first sentence and properly omitted them from his consecutive sentences.

> "A defendant incarcerated prior to trial who receives consecutive sentences is only allowed pre-trial jail credits to be applied toward the first sentence." The effect of consecutive awards of the full amount of pretrial jail credit would be to double the credit. "An inmate may not 'double-dip' for credits from a period of continuous confinement."

*Gary Wayne Garrett v. George Little, Commissioner, et al.*, No. M2008-01867-COA-R3-CV, 2009 WL 2432974, at *3 (Tenn. App. Aug. 7, 2009). Petitioner received pre-trial credit toward his effective sentence. This issue is without merit.

### B. Ineffective Assistance of Counsel

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f)

(2012); *Lane*, 316 S.W.3d at 562 (citing *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane*, 316 S.W.3d at 562 (quoting *Grindstaff*, 297 S.W.3d at 216).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger*, 279 S.W.3d at 292 (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Questions regarding the credibility of witnesses are matters entrusted to the trial judge as the trier of fact. *Dellinger*, 279 S.W.3d at 292 (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact carry the weight of a jury verdict and are conclusive on appeal unless the preponderance of the evidence is otherwise. *Rigger*, 341 S.W.3d at 307 (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997)). However, conclusions of law receive no presumption of correctness on appeal. *Rigger*, 341 S.W.3d at 307 (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Dellinger*, 279 S.W.3d at 294 (citing *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007)).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). The constitutional right to counsel attaches when adversarial judicial proceedings are initiated against the defendant. *State v. Mitchell*, 593 S.W.2d 280, 286 (Tenn. 1980). "Initiation" is construed as issuance of an arrest warrant, the time of the preliminary hearing in cases where an arrest warrant is not first issued, or by indictment or presentment issued by a grand jury. *Id.* at 286.

To prevail on his claim of ineffective assistance of counsel, petitioner must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Finch*, 226 S.W.3d at 315; *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Baxter*, 523 S.W.2d at 936)). To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Strickland*, 466 U.S. at 688). As our supreme court has previously held:

> "'[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is

a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence . . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.'"

*Baxter*, 523 S.W.2d at 934-35 (quoting *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974)). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689); *see Finch*, 226 S.W.3d at 316.

To establish that petitioner suffered prejudice as a result of counsel's deficient performance, petitioner "'must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different.'" *Finch*, 226 S.W.3d at 316 (quoting *Vaughn*, 202 S.W.3d at 116). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Vaughn*, 202 S.W.3d at 116 (quoting *Strickland*, 466 U.S. at 694); *see Finch*, 226 S.W.3d at 316. As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and the reliability of the outcome was called into question. *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694; *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

Petitioner must establish both deficient performance and prejudice therefrom to be entitled to post-conviction relief. *Vaughn*, 202 S.W.3d at 116; *Howell*, 185 S.W.3d at 326. It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

In his brief to this court, petitioner raises the following claims of ineffective assistance of counsel: (1) trial counsel failed to advise him properly with regard to pretrial jail credits; (2) trial counsel failed to advise petitioner that he was not facing a potential three-year sentence for three separate assault charges; (3) trial counsel failed to review discovery with petitioner; and (4) trial counsel failed to argue petitioner's pro se motion for a speedy trial. Any other claims of ineffective assistance of counsel raised in the pro se petition or amended petition are considered abandoned on appeal. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) ("[w]hile the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal"). Moreover, petitioner has added the claim of ineffective assistance of counsel for failure to advise him properly with regard to pretrial jail credits on appeal without litigating this claim in the post-conviction court. As noted above,

petitioner is limited to the issues as he presented them in his post-conviction petition and addressed them at the post-conviction hearing. *Mario Deangalo Thomas*, 2005 WL 1669898, at *4. Accordingly, we will not address the abandoned claims and the newly-added claim on appeal.

### 1. Trial Counsel's Alleged Failure to Provide Petitioner with Discovery

The post-conviction court determined that petitioner received discovery and reviewed it with trial counsel. The record does not preponderate against the trial court's findings of fact. Trial counsel testified that he reviewed and evaluated the State's evidence with petitioner in light of the elements of each of the charged offenses, specifically reviewing the three counts of assault based on different theories. The post-conviction court properly denied relief on this claim.

### 2. Trial Counsel's Alleged Failure to Advise Petitioner with Regard to Alternate Theories of Assault

As discussed *supra*, the post-conviction court found trial counsel's testimony that he explained the three counts of assault based on alternate theories to be credible, while finding petitioner's testimony to the contrary not credible. The record does not preponderate against the post-conviction court's findings of fact, and petitioner is not entitled to relief on this claim of error.

### 3. Trial Counsel's Alleged Failure to Argue Motions Petitioner Filed Pro Se and Explain His Reasons Therefor

On appeal, petitioner only contests trial counsel's failure to argue petitioner's pro se motion for a speedy trial. Trial counsel testified that he declined to file the motions petitioner requested or argue the motions petitioner had filed pro se because he believed the motions to be frivolous. Trial counsel did not pursue the speedy trial motion that petitioner filed because the case was already set for trial when he became involved. The first case set for trial was the escape charge, but the case was not tried as scheduled due to the assistant district attorney's calling in sick. They settled all of petitioner's cases prior to the next trial setting. He further testified that he believed that petitioner understood why trial counsel did not pursue said motions. The post-conviction court ruled that "there [had] been no showing that any filing and hearing of a motion would have affected the outcome of the petitioner's assault case."

It is important to our analysis of this issue that petitioner was incarcerated on several offenses that pre-dated his arrest and indictment for assault. In reviewing a speedy trial claim,

> "Prejudice . . . should be assessed in the light of the interests of the defendants which the speedy trial right was designed to protect," which the Supreme Court identified as: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."

*State v. Bowman*, 327 S.W.3d 69, 87 (Tenn. Crim. App. 2009) (quoting *Barker v. Wingo*, 407 U.S. 514, 532 (1972)). Petitioner's incarceration was attributed, at least in part, to pre-trial detention on other offenses. A speedy trial motion in the instant case would not have impacted his pre-trial incarceration. As the post-conviction court found, petitioner has made no showing that the filing of a motion for speedy trial would have impacted his case. Likewise, he has not demonstrated that he experienced anxiety and concern that was attributed to the instant case rather than the prior offenses for which he was incarcerated, which included two counts of attempted second degree murder. Moreover, because petitioner was incarcerated on other charges, he cannot establish that he was prejudiced by counsel's failure to file or argue said motion. This issue is without merit.

## C. Due Process Concerns

Although not individually listed, petitioner appears to raise the following due process concerns: (1) the prosecutor committed multiple errors during the guilty plea hearing; (2) the State engaged in vindictive prosecution; and (3) his right to a speedy trial was implicated.

Petitioner claims that the prosecutor was "unsure what he [was] looking at when reviewing the indictment for assault during the plea submission hearing." Petitioner takes out of context a statement by the prosecutor that "it looks like three counts of an assault." The prosecutor used a colloquial figure of speech. The record does not reflect that the prosecutor was unknowledgeable or in any way confused as to the reading of the indictment.

Petitioner asserts that when the prosecutor announced that petitioner was pleading guilty as charged and that the State would dismiss counts two and three of the indictment, the phrase implied that petitioner faced a sentence greater than eleven months, twenty-nine days. This issue has been addressed, *supra*, in terms of the voluntariness of petitioner's guilty plea and the claim of ineffective assistance of counsel. The post-conviction court credited trial counsel's testimony over petitioner's testimony and determined that trial counsel adequately

advised petitioner that he was indicted for three alternate counts of assault and could only be convicted of one count.

Petitioner contends that the trial court referred to assault as a Class E misdemeanor during the plea submission hearing, thereby increasing his confusion. This claim of ineffective assistance of counsel was not raised in the post-conviction court and was addressed for the first time on appeal from the denial of post-conviction relief. Again, petitioner is limited to the issues as he presented them in his post-conviction petition and addressed them at the post-conviction hearing. *Mario Deangalo Thomas*, 2005 WL 1669898, at *4. Accordingly, we will not address this newly-added claim on appeal.

Petitioner advances multiple claims with regard to the proceedings pertinent to counts embodied by indictment number 07-05925. Neither the indictment nor the judgment therefrom is properly before this court on appeal. Thus, we will not address those claims herein. However, petitioner maintains that the State's adding a new charge to the plea agreement, driving while a habitual motor vehicle offender, during the hearing is relevant to this appeal because "the deal was based on 'all or nothing.'" We reject petitioner's argument. He claims that "by pleading guilty to the additional count, it could enhance punishment on future sentences, [thus] he was not placed in a position to make a knowing and intelligent decision." His guilty plea to the additional count of being a habitual motor vehicle offender is not at issue in this appeal. Insofar as petitioner attempts to bring this claim within the scope of our review by claiming that the plea package was an "all or nothing" offer, we note that "[t]here is no constitutional right of an accused to plea bargain, and there is no duty of the State to engage in plea negotiations." *State v. Joseph Lance Risner*, No. E2002-01112-CCA-R3-PC, 2003 WL 21492929, at *5 (Tenn. Crim. App. June 30, 2003). Because this issue does not involve an error of constitutional dimension, we deny relief on this claim of a due process violation.

In the post-conviction court, petitioner advanced two claims of vindictive prosecution. Although he now incorporates those claims into his due process argument, we recognize that due process rights can be implicated through vindictive prosecution. *See Blackledge v. Perry*, 417 U.S. 21 (1974).

Petitioner first claims that the State engaged in vindictive prosecution by increasing his bond on the assault charge from $250 to $5,000 within twenty-four hours. The post-conviction court ruled that petitioner presented no proof regarding why the trial court increased his bond, and it could not presume error from a silent record. We agree with the post-conviction court. Petitioner bears the burden of proving his allegations by clear and convincing evidence. He presented no evidence underlying the issue of his bond increase. He is not entitled to relief on this issue.

-13-

He next contends that the State allegedly instructed reporter Andy Wise to pursue petitioner and record an incriminating statement from him. The post-conviction court found petitioner's allegation to be lacking in credibility. The post-conviction court is in the better position to judge the credibility of the witnesses, and we will not disturb its finding unless the evidence preponderates against it. Petitioner is not entitled to relief on this claim of error.

Finally, petitioner presumably asserts that his right to a speedy trial was violated. In support, he merely alleges that his trial date was reset because the prosecutor called in sick and that the trial court reset it for seven months later. He claims that his being oppressed by pre-trial incarceration caused him to enter into a guilty plea. In his petition, he claimed that the delay in prosecuting his case was intentional and was designed to give the State "a tactical advantage." Petitioner asserted that the pro se motions he filed were either misplaced or intentionally removed from his file to hinder his case. As noted above, because petitioner was incarcerated and awaiting trial on several charges that pre-dated his assault charge, we cannot conclude that petitioner's right to a speedy trial on the instant charge prejudiced him. He is not entitled to relief on this claim.

## CONCLUSION

After a thorough review of the record, the parties' briefs, and the applicable case law, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE